JOHN TYMON, JR., an Infant, by JOHN TYMON, His Guardian ad Litem, et al., Respondents, v. M. L. S. CONSTRUCTION CO., INC., Appellant.

(Argued April 12, 1933; decided June 6, 1933.)

*Alvin R. Cowan* and *Harold M. Phillips* for appellant.

*Charles S. Scholnicoff* for respondents.

CRANE, J. The plaintiff, a four-year old child, has recovered a judgment for personal injuries received in the areaway of premises 1985 Crotona avenue, New York city, and the appeal requires the review of the respective rights

of property owners having areas, stoops or courtyards in front of their premises, and persons passing along the adjoining sidewalk.

Nineteen hundred and eighty-five Crotona avenue is an apartment house with an areaway, located in front, extending five feet beyond the building line into the street. It was thirty-seven feet, six inches in length, five feet in width, and went down five feet below the level of the street. A picket fence sufficiently high and extending its full length guarded it from the street. At the extreme right of the fence, as you face the building, there was a gateway through which persons passed down a flight of stairs and into the lower apartment. There was no occasion for any of the public to use any other part of the areaway to the left, into which the windows of the building opened from the lower apartment. The sidewalk proper, from the fence to the gutter, was thirteen feet wide. This areaway, although extending out from the building line, was not an unlawful or illegal use of the street. The city was authorized to permit such reasonable and moderate use of the street for areas, stoops, courtyards, vaults and like purposes found necessary and convenient at times for adjoining property owners. As this construction had existed for a period of twenty-five years and more, there is a presumption that it was constructed and maintained with the consent of the public authorities. (*Deshong* v. *City of New York*, 176 N. Y. 475.) The license or consent might be revoked by the city at any time. This reasonable appropriation of part of the street for private user did not, therefore, constitute a nuisance, and no such claim is made in this case. (*Matter of Green* v. *Miller*, 249 N. Y. 88; *Bradley* v. *Degnon Contracting Co.*, 224 N. Y. 60.) The very nature of these areaways, like stoops and vaults, indicates that to an extent they are for the use of the adjoining property owner, to the exclusion of the general public. The defendant had fenced the areaway and put a gate in the

fence to exclude the public as he had a right to do, and this right is not questioned. It would, indeed, be a novel idea, that the stoop leading up to a man's front door could be used by the public with the same freedom as the sidewalk, and that the owner had no right to exclude idlers and loafers. One's courtyard, licensed by the city, which he has fenced off, affords such privacy that strangers cannot enter for the mere purpose of walking or standing in it. The license gives the owner a certain amount of privacy and control over the stoop, the area, the courtyard and the vault. (*Donnelly* v. *City of Rochester*, 166 N. Y. 315, 318; *Strobel* v. *Liebmann*, 197 N. Y. 348.) As to courtyards see *City of New York* v. *Masten* (174 App. Div. 661; affd., 223 N. Y. 638).

CULLEN, J., in the *Donnelly* case, said: " While the right to excavate areaways or construct stoops in the highway is not an incident to the ownership of the adjacent land, a long usage of the highway for such purposes justifies the inference that the municipal authorities have consented to the presence of such structures on the highway, and ' it is competent for the legislature to authorize a limited use of sidewalks in front of buildings in cities and villages for stoops or cellar openings, or underground vaults, for the more convenient and beneficial enjoyment of the adjacent premises.' " The Appellate Division, therefore, is in error in stating that the permission " to maintain this areaway in no way changed the essential character of this space as a part of the public highway or operated to diminish or destroy the right of the plaintiff to use it in common with the general public " (237 App. Div. 98), and the authorities cited do not sustain such a proposition. The areaway is and remains a part of the highway and the city at any time may revoke its license and restore the space thus used to sidewalk purposes. As long, however, as the city permits its use, a certain amount of privacy is given to the adjoining owner.

This privilege or license, however, does not relieve the owner from all duty or responsibility to the public or those using the adjoining sidewalk. He must, for instance, maintain a reasonably sized and secure fence to protect the public from falling into the areaway. This was the *Donnelly* case. So, too, he must exercise care to maintain the stairways leading to the entrance in a reasonably safe condition for those having occasion to go in and out of the building. This was *Fagan* v. *Bishop* (176 App. Div. 777). And we may go further and say that the defendant in this case was under the duty to keep *all* of the areaway in a reasonably safe condition for those who he could reasonably anticipate might have occasion to enter it. He probably could and should anticipate that a person might accidentally drop something over the railing into the areaway, or that the hat of a passer-by might blow off. Under such circumstances the loser would have the implied right or permission to go into the areaway to recover the lost article. The likelihood of such an occurrence would require mutual regard for the safety of one for the other. The person entering would be obliged to use care and caution, and the owner would be obliged to maintain the areaway free from hidden and known dangers. The proximity of the sidewalk, the likelihood of necessary entry by the pedestrian and his special license would make his duty an active, not a passive, one verging on something more than his duty to a mere licensee. (Am. Law Inst.; Restatement of the Law of Torts, §§ 205, 209, 215.) With this relative duty in mind, we may pass to the facts in this case, and determine whether the judgment which the plaintiff has recovered against the defendant can be sustained.

The janitress of this apartment, some time prior to the accident, had placed an old radiator in the dead end of the areaway, about twenty-nine feet from the stairs leading from the street to the apartment. To reach it a person would walk down the few steps from the street and then,

instead of entering the doorway at the foot of the steps, would be obliged to proceed to the left thirty feet along the pavement of the areaway. In going to the point he would pass in front of three or more windows opening from the areaway into the basement. The radiator was leaning against the wall and, if left untouched, was apparently in a safe and secure place. The plaintiff, a young child four years of age, dropped a penny on the sidewalk which rolled through the railing down into the areaway. He thereupon walked to the gate, proceeded down the stairs and along the areaway without meeting any danger. All was safe. In looking for the penny the boy attempted to move the radiator, which fell over on his foot, causing the injury. Under these circumstances was the owner liable? Recognizing his obligation to the public as above stated, can we, or should we say that he was bound to anticipate any danger arising from standing this radiator in his areaway? We think not. The radiator did not fall of its own weight; neither was there anything unreasonable in using this vault or railed off areaway for the temporary storing of material taken out of the building, especially when it was removed some thirty feet or more from the stairway and the building entrance. Even then, when placed against the wall, the radiator was in no sense dangerous to persons using the areaway unless force was applied to it. That any outsider would have occasion to enter the areaway for its entire length and attempt to move the radiator was not such a happening as a reasonably prudent man could or would anticipate. These words cannot be used to hide an insurer's risk or an absolute liability for any and all accidents. While it is true that children sometimes come into this areaway to play, the evidence shows that they were repeatedly cautioned and told to keep out; that the janitress at all times prohibited them from coming there. The owner had never acquiesced or permitted children to use this areaway as a playground, and the accident did not happen from such use.

Under the facts we find no failure of duty upon the part of the defendant to maintain this areaway in a reasonably safe and proper condition for all the uses which he had reason to anticipate, and for this reason we must reverse the judgment below, and dismiss the complaint.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, O'BRIEN and HUBBS, JJ., concur; POUND, Ch. J., KELLOGG and CROUCH, JJ., dissent on the ground that the question of fact was properly submitted to the jury.

Judgments reversed, etc.