BENJAMIN SCHLAKS, Appellant, *v.* JOSEPH SCHLAKS et al., Respondents.

First Department, October 23, 1962.

*Samuel F. Berkon* of counsel (*Bernard Meyerson* with him on the brief), for appellant.

*Theodore Gilbert* of counsel (*Gilbert & Gilbert,* attorneys), for respondents.

BREITEL, J. At the close of the entire case, defendants having rested without submitting any proof, the trial court granted defendants' motion for a directed verdict in their favor. Plaintiff appeals, urging that the issues should have been submitted to the jury.

The judgment in favor of defendants, based upon the direction of the verdict, should be affirmed. The trial court would have been required to set aside a contrary verdict for legal insufficiency of the evidence (Civ. Prac. Act, § 457-a, subd. 1).

The action was in negligence for personal injuries sustained by plaintiff. Defendants were husband and wife. Plaintiff, the father of defendant husband, had been a frequent social guest in their home, a one-family house. On August 4, 1956, when plaintiff was 66 years of age, and a guest in the home, he slipped and fell on a waxed but incompletely buffed floor situated in one of the living rooms. Defendant wife had waxed the floor, but left the buffing unfinished in order to keep an outside engagement. Plaintiff was asleep in an upstairs room. Later he came down and entered the room, unaware of the condition of the waxed floor. Because of its slippery condition, he fell, sustaining various alleged injuries to his leg, some permanent.

While plaintiff knew from previous experience that the floor was kept waxed and shiny, he did not know of the incomplete buffing. An expert testified that the failure to finish the buffing of a waxed floor would produce a dangerous condition likely to cause injury to the unwary. The expert was a professional floor waxer employed in private homes and business establishments. Defendant wife testified that she and her husband had owned the house for a year; that she generally waxed the floor with one paste or another; and that she had left the job half-done because of her outside engagement.

Critical to the case is the absence of proof that the wife had any special experience or knowledge about the waxing of floors. It does not even appear that she had waxed this floor or other floors any considerable number of times or that she was aware of the hazards with which the professional floor waxer was familiar. The professional floor waxer testified only with respect to the accepted practice in the " commercial business " of waxing floors for others. No evidence was offered establishing a basis for attributing professional knowledge or experience to the housewife.

Except for his joint ownership of the home there is nothing in the proof which purports to fix liability on defendant husband. Nor was any argument made on this appeal attempting to fasten such liability on him.

On these facts the directed verdict in favor of defendants was correct.

The traditional rule with respect to social guests has been reaffirmed by the Court of Appeals very recently in a case in which the trial court had applied a new rule purportedly intermediate between those applicable to invitees and licensees (*Krause* v. *Alper,* 4 N Y 2d 518, revg. 6 Misc 2d 622, affd. 4 A D 2d 968). And as explicated by this court in another case the rule is that to a licensee, such as a social guest, " the owner owes no greater duty than to avoid the maintenance of traps, hidden dangers, or wanton and reckless conduct to which the licensee may be exposed, unless the latter is first warned " (*Wilder* v. *Ayers,* 2 A D 2d 354, 355–356, affd. 3 N Y 2d 725). The key to liability is actual knowledge by the owner of the hazard to the licensee, albeit such knowledge is determined objectively.

The Restatement of Torts expresses the rule as:

" A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

" (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

" (b) * * * " (§ 342).

(See, generally to the same effect: Prosser, Torts [2d ed.], § 77.)

Restatement Second, Torts, Tent. Draft No. 5 (1960), while it changes the language to emphasize the objectivity of the test of actual knowledge, does not change the rule insofar as applicable here.* Two of the illustrations to section 342 in the Restatement, materially unchanged in the proposed Restatement Second, are particularly apt. They read:

" 2. A invites his friend, B, to dinner. A knows that his private road has been dangerously undermined at a point where it runs along an embankment and that this is not observable to a

---

* Revised section 342 as proposed reads:

" A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

" (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

" (b) * * * ".

The principal effect of the change would seem to be that the test of knowledge is objective, rather than subjective; but knowledge it still must be, rather than a breach of duty to know (i.e. ordinary negligence). See reporter's note to Institute at page 95 of the tentative draft, in which the reporter disavows any substantive change in this part of the section.

person driving along the road. A, when giving the invitation, forgets to warn B of this. While B is driving along the road, it collapses causing serious harm to B. A is liable to B.

"3. Under facts similar to those in Illustration 2, except that A does not know that the road has been undermined but could have discovered it had he paid attention to the condition of his road, A is not liable to B."

The hiatus in this case is that there is no proof that defendant wife knew (or had reason to know) that an incompletely buffed floor was particularly hazardous or more slippery than a buffed floor. Such knowledge may not be assumed to be common, since many might believe that a buffed waxed floor is more slippery than one before it has been buffed. There was no attempt to prove or contend that there was such common knowledge. Hence, the fact that the wife created the condition does not advance plaintiff's position, so long as it does not appear that she knew (or had reason to know) that she had created a hazardous condition. The knowledge of the professional floor waxer is not attributable to her nor were the standards of the commercial floor-waxing trade shown to be the standard of care for the housewife. This is especially true if there be no showing of particular experience by the housewife with the process. In any event, the point of the distinction is that the owner is not liable to the social guest for a breach of duty of ordinary care (*Hirschman* v. *Hirschman,* 4 A D 2d 630, 632).

*Curren* v. *O'Connor* (304 N. Y. 515) involving a pleading in a guest case is of no help in the analysis of the problem here arising after trial proof. Nor is a case involving dismissal on the opening of plaintiff's trial counsel of much greater help (*Faber* v. *Meiler,* 278 App. Div. 849). Such cases merely stand for the proposition that a social guest is entitled to a full trial when he alleges or states that the host has been guilty of wanton or reckless conduct with respect to known hazards. Allegations or contentions are one thing; trial proof is another. On the other hand, *Wolfe* v. *Edwards* (1 A D 2d 742), a case arising after full trial, and much relied upon by plaintiff in argument, involved proof of multiple concurring conditions found to be poor practice and contributory to the accident, namely, the presence of unremoved detergent, application of wax before the floor was dry from detergent cleansing, the presence of accumulated water, and, perhaps, the absence of the usual bath mat. These several elements, some of which are hazards evident to the ordinary person of nonprofessional experience, make the *Wolfe* case inapplicable to the present case.

*Corrado* v. *Delzotti* (15 A D 2d 527), on which plaintiff also relies, involved facts in which, again, a commonly understood danger was created, namely, the spilling on a floor of a liquid and permitting the liquid to remain there. Hence, the actor knew (or had reason to know). While the court wrote in terms of " affirmative act of negligence " such language is not completely or unambiguously descriptive of the liability of an owner to a licensee.* Indeed, the leading case, relied upon by the court, *Higgins* v. *Mason* (255 N. Y. 104) stated the elements of the rule precisely in the manner restated above. It was there said (p. 110): " Mason [the defendant] would be liable only if he *knew* of the dangerous condition; *realized* that it involved an unreasonable risk; *believed* that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved."

In short, and by way of repetition, an injured licensee may not recover because of the ordinary negligence of the host, even if the cause of the injury is an act or omission created by the host; but he may recover if the act or omission of the host was wanton or reckless, that is, in disregard of the known risk, even if without purpose to cause injury. Particularly, although the wife's failure to complete the buffing of the floor or to warn her guest may have been careless by ordinary or professional standards, she was not guilty of reckless or wanton conduct unless, in fact, she knew (or had reason to know) that the unfinished floor was a hazardous condition, and then she failed to warn her guest or otherwise protect him.

Accordingly, the judgment in favor of defendants on the direction of the verdict should be affirmed, with costs to defendants-respondents.

BOTEIN, P. J., RABIN, McNALLY and EAGER, JJ., concur.

Judgment unanimously affirmed, with costs to respondents.

---

* However, the " affirmative act of negligence " language has been used often (see 65 C. J. S., Negligence, § 35, subds. f, g, and h, and cases cited at n. 23, p. 500; Injury to Social Guest, Ann. 25 A. L. R. 2d 598, 601–603). Close examination of the cases, whatever the language used, shows liability to depend upon knowing increase of risk, followed by failure to exercise care to warn or protect the guest. For a pungent criticism of the affirmative negligence terminology in this area of the law and the prior case which evidently fostered its use in New York, see *Vaughan* v. *Transit Development Co.* (222 N. Y. 79, 82–83 [POUND, J.]).